## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER KELLEY,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-CV-0015-L-BH** |
| | § | |
| **MERRICK GARLAND, ATTORNEY** | § | |
| **GENERAL, U.S. DEPARTMENT OF** | § | |
| **JUSTICE,** | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge**[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, *Defendant's Motion to Dismiss, and Brief in Support Thereof,* filed November 18, 2022 (doc. 17), should be **GRANTED in part** and **DENIED in part**.

### I.  BACKGROUND

Christopher Kelley (Plaintiff), a legal assistant for the Federal Bureau of Prisons (BOP), sues Merrick Garland, Attorney General of the United States Department of Justice[2] (Defendant), for unlawful discrimination based on disability in violation of the Americans with Disabilities Act (ADA), the Rehabilitation Act of 1973 (Rehabilitation Act), Title VII of the Civil Rights Act of 1964 (Title VII), and the Family Medical Leave Act (FMLA). (doc. 3 at 2.) [3]

Plaintiff is a licensed attorney who has been diagnosed with dyslexia, dysgraphia, and

---

[1] By *Standing Order of Reference* dated August 1, 2022 (doc. 7), this *pro se* case was referred for full case management.

[2] At the time this lawsuit was filed, William P. Barr was the acting Attorney General of the U.S. Department of Justice, but Merrick Garland became the Attorney General on March 11, 2021, so he is automatically substituted as a party under Fed. R. Civ. P. 25(d).

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

attention deficit hyperactive disorder. (*Id.* at 4.) In April 2013, the BOP hired Plaintiff as a legal assistant at the GS-05 level through Schedule A. (*Id.* at 4-5.) Schedule A is a non-competitive appointment process that allows a federal agency to hire a person with a certified disability. (*Id*. at 5 (citing 5 C.F.R. § 213.3102(u).)   After a two-year trial period, the agency may convert the employee's non-competitive position, known as Excepted Appointment, to a position in the competitive service, known as Career Conditional. (*Id.*)

During his first two years with BOP, Plaintiff applied for over 400 job postings with the federal government, but "[e]ach time he was rejected/non-considered/not referred." (*Id.*) In May 2015, Plaintiff received a "non-consideration" response to his application as a paralegal specialist for the Office of the United States Attorney (OUSA) in Ohio. (*Id.*) On May 11, 2015, the OUSA's HR officer emailed Plaintiff and explained that he was not considered for the position because he "submitted documentation as excepted appointment instead of career conditional." (docs. 3 at 5-6; 21-1 at 2.) She noted that based on the regulations, he should have been converted to Career Conditional in April 2015. (*Id.*) "It was at this point that [Plaintiff] became aware that his status as a Schedule A Excepted Appointment may have been the reason why all of his previous applications were not referred for consideration." (doc. 3 at 6.) Plaintiff immediately reached out to an HR specialist with the BOP about his Career Conditional conversion but was told that he "will never be converted." (*Id.*)

On July 6, 2015, Plaintiff was notified of "non-selection" for a Texas paralegal specialist opening within the BOP. (*Id.* at 7.) When the position was originally announced in October 2014, it was a GS-11 level position and did not accept Schedule A applications. (*Id.*) After the position was reposted for GS-09/GS-11 level applicants, Plaintiff wanted to be considered under Schedule A but was unable to "submit a complete application due to the [BOP's] failure to provide a means

for which a disabled person could apply for said job." (*Id.*) Plaintiff met with the BOP's HR Chief about applying for the position at the GS-09 level under Schedule A and was told that "one could not be consider[ed] under Schedule A hiring for this announcement." (*Id.*) He requested a secondary review and a verbal explanation for the BOP's non-selection decision, but his request was denied. (*Id.*)

On July 7, 2015, Plaintiff met with an Equal Employment Opportunity (EEO) counselor, alleging he was not considered for the BOP's paralegal position in Texas because of his disability. (*Id.* at 7-8.) On October 19, 2015, Plaintiff filed a complaint with the BOP's EEO office, alleging disability discrimination. (docs. 3 at 9; 21-2 at 14-19.) According to the EEO Investigation Report, the Department of Justice (DOJ) accepted for investigation Plaintiff's claim that he had been discriminated against on the basis of his disability when he was notified of non-selection for the Texas paralegal position in July 2015, and his allegations that he had missed out on various employment opportunities with the federal government "due to his Excepted Appointment (Schedule A) and management's failure to convert him to Career Conditional in a timely manner." (doc. 21-2 at 2.) After a full hearing was held on Plaintiff's EEO complaint, the administrative judge issued a written decision finding no discrimination on August 20, 2020. (doc. 3 at 15.) On October 1, 2020, the DOJ entered a Final Order accepting the administrative judge's decision. (*Id.* at 15, 21.) Plaintiff received the notice of his rights to appeal the decision (Notice) on October 5, 2020, but he did not appeal the decision to the Equal Employment Opportunity Commission (EEOC). (*Id.* at 15.)

On January 5, 2021, Plaintiff filed this lawsuit. (*See* doc. 3.) He alleges that the BOP discriminated against him based on his disability when it (1) failed to timely convert him to Career Conditional, which resulted in him not being considered for various job positions with the federal

government; (2) did not provide him a path as an Excepted Appointment employee to apply for positions for which he qualified; and (3) failed to accommodate his requests to apply for positions under Schedule A and to have verbal meetings with HR to discuss reconsideration or secondary review of his applications. (*Id.* at 16-18.)

On November 18, 2022, Defendant moved to dismiss Plaintiff's claims for lack of subject-matter jurisdiction and failure to state a claim. (doc. 17.) Plaintiff responded on December 9, 2022, and Defendant replied on December 23, 2022. (docs. 21; 22.)

## II.  RULE 12(b)(1)

Defendant moves to dismiss Plaintiff's ADA claim under Rule 12(b)(1) for lack of subject matter jurisdiction. (doc. 17 at 1.)

### A.  <u>Legal Standard</u>

A motion to dismiss under Rule 12(b)(1) challenges a court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or a by a court on its own initiative at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12

motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

A district court may dismiss for lack of subject matter jurisdiction based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (en banc). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id.* Facial attacks are usually made early in the proceedings. *Id.* "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998) (citations omitted).

If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature

of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, Defendant relies solely on Plaintiff's complaint in support of his motion to dismiss under Rule 12(b)(1).[4] The motion therefore presents a facial attack that does not require the resolution of factual matters outside the pleadings. *See Williamson*, 645 F.2d at 412-13.

## B.    <u>Sovereign Immunity</u>

Defendant contends that Plaintiff's ADA claim is barred by sovereign immunity. (doc. 17 at 5.)

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Because federal sovereign immunity is jurisdictional in nature, the consent or waiver must be unequivocally expressed. *Freeman v. United States*, 556 F.3d 326, 335 (5th Cir. 2009). The terms of the consent or waiver define the jurisdictional boundaries to entertain the suit. *Meyer*, 510 U.S. at 475. In general, the scope of a waiver of sovereign immunity is strictly construed "in favor of the sovereign." *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008). The plaintiff has the burden to show an "unequivocal waiver of sovereign immunity." *St. Tammany Parish ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).

The ADA prohibits employers from discriminating against a qualified employee based on disability. 42 U.S.C. § 12112(a). The United States is explicitly excluded from the statutory definition of employer, however. *See* 42 U.S.C. § 12111(5)(B) (providing that "[t]he term

---

[4]Defendant attached a document to his motion, but it is being considered only with respect to his Rule 12(b)(6) motion to dismiss. (*See* doc. 18-1.)

'employer' does not include the United States [or] a corporation wholly owned by the government of the United States"). Further, the ADA does not contain an unequivocal and unambiguous waiver of the federal government's sovereign immunity. *See Henrickson v. Potter*, 327 F.3d 444, 447 (5th Cir. 2003) (holding that "the entire federal government is excluded from the coverage of the ADA").

Plaintiff has failed to show that the United States waived the BOP's sovereign immunity under the ADA. *See St. Tammany Parish ex rel. Davis*, 556 F.3d at 315 (holding that the burden is on plaintiff to show federal government's consent to suit). His ADA claim is barred by sovereign immunity and should be dismissed without prejudice for lack of subject matter jurisdiction. *See Henrickson*, 327 F.3d at 447 (affirming dismissal of federal employee's ADA claim against federal agency employer on sovereign immunity grounds); *Smith v. Potter*, 400 F. App'x 806, 812 (5th Cir. 2010) (holding that no claim against federal agency is permitted under the ADA).

## II.  RULE 12(b)(6)

Defendant moves to dismiss the remaining claims under Rule 12(b)(6). (*See* doc. 17.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.' " *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss or in a response to a Rule 12(b)(6) motion to dismiss, a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). However, if "matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll

parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. Civ. P. 12(d).

Nevertheless, "pleadings" for the purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citations omitted). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (referencing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)). Attachments falling under these three categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, the pleadings consist of Plaintiff's original complaint and the attached copy of the Notice. (*See* doc. 3 at 21-23.) In response to Defendant's motion, he attached the May 11, 2015 emails about the OUSA paralegal position and his employment status, the 221-page EEO Investigation Report, a filing from his EEO case, and documentation concerning the original filing of this lawsuit. (*See* docs. 21-1-21-4.) Because his *pro se* filing is properly construed as a motion to amend and granted,[5] these attachments are also considered part of the pleadings. *See In re*

---

[5]Because Plaintiff is proceeding *pro se*, his pleadings are to be provided "a liberal construction." *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012). As a general rule, claims and allegations that were not raised in the complaint, but were raised for the first time in a response to a dispositive motion, are not properly before the court. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, *4 n. 3 (N.D. Tex. Aug. 15, 2014); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the court) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). Nevertheless, the Fifth Circuit has held that courts should construe new allegations and theories in responses to dispositive motions as motions to amend. *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss in which plaintiff first alleged that she had been willfully discriminated against should be treated as a motion to amend). "This is particularly true where ... the litigant is *pro se* and has not yet made any amendments to h[is] complaint." *Riley v. Sch. Bd. Union Par.*, 379

*Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Norris*, 500 F.3d at 461 n.9.

Defendant attached to his motion to dismiss a copy of Plaintiff's EEO complaint. (*See* doc. 18-1.) Because the EEO complaint is referred to in Plaintiff's original complaint, central to his claims, and a matter of public record, it is considered part of the pleadings. *See Collins*, 224 F.3d at 498-99; *Norris*, 500 F.3d at 461 n.9; *see also Hawkins v. AT&T*, No. 3:12-CV-1173-L, 2013 WL 4505154, at *3 (N.D. Tex. Aug. 23, 2013) ("Documents contained in a Title VII administrative record are public records for which the court can take judicial notice and consider in a motion to dismiss."). It is unnecessary to treat the motion to dismiss as a summary judgment motion.

## A.    Failure to Exhaust Administrative Remedies

Defendant moves to dismiss Plaintiff's claims under Title VII and the Rehabilitation Act for failing to exhaust his administrative remedies. (doc. 17 at 6-7, 9-10.)

### 1.  Title VII

Defendant contends that Plaintiff failed to exhaust his administrative remedies with respect to any Title VII claim because he did not pursue an administrative claim under Title VII before filing suit. (doc. 17 at 7.)

Title VII makes it unlawful for employers to discriminate against individuals with respect to their "compensation, terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Before an individual can pursue a Title VII claim in federal court, he must timely exhaust his available administrative remedies. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). This typically means that the claimant must file a charge with the EEOC and receive a "right to sue" letter before filing suit. *See* 42 U.S.C. § 2000e-5(e)(1); *Edelman v. Lynchburg College*, 535 U.S. 106, 109 n.1 (2002).

---

F. App'x 335, 341 (5th Cir. 2010). Plaintiff's allegations and attachments in response to Defendant's motion to dismiss are construed as a motion to amend, the motion is granted, and the new allegations and attachments are considered.

Courts have routinely held that a plaintiff's complaint is subject to dismissal under Rule 12(b)(6) when the plaintiff "fails to allege exhaustion of administrative remedies." *Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir. 1979); *see Johnson v. U.S. Postal Serv.*, No. 3:15-CV-1081-L-BK, 2016 WL 791076, at *1-2 (N.D. Tex. Jan. 27, 2016) (finding that plaintiff's Title VII claim should be dismissed for failure to state a claim rather than for lack of jurisdiction where the plaintiff failed to allege exhaustion of administrative remedies); *Carr v. United Reg'l Health Care Sys., Inc.*, No. 4:06-CV-194-A, 2006 WL 2370670, at *2 (N.D. Tex. Aug. 16, 2006) (determining that claims under the ADA and the Rehabilitation Act were subject to dismissal "because [plaintiff] has failed to allege that he exhausted his ... administrative remedies...."); *Shabazz v. Tex. Youth Comm'n*, 300 F. Supp.2d 467, 471 (N.D. Tex. 2003) (dismissing Title VII claim where plaintiff alleged that he filed a charge but failed to allege that a right to sue letter was issued or received).

In the Preliminary Statement section of the original complaint, Plaintiff states that he is seeking redress for violations of his civil rights under Title VII. (doc. 3 at 2.) To the extent that his complaint asserts a Title VII claim, neither it nor Plaintiff's responsive brief asserts that he timely filed a charge with the EEOC regarding a Title VII claim, or that he received a right-to-sue letter about such a claim. He also has not addressed or controverted Defendant's argument that he failed to exhaust his administrative remedies as to any claim of Title VII discrimination. Plaintiff's Title VII claim should therefore be dismissed for failure to exhaust administrative remedies.[6] *See Hoffman*, 596 F.2d at 685 ("A judicial complaint that fails to allege exhaustion of administrative remedies ... is properly subject to dismissal."); *see, e.g., Shabazz*, 300 F. Supp.2d at 471

---

[6]"When a district court dismisses a claim under Rule 12(b)(6) for failure to exhaust administrative remedies, the dismissal is without prejudice to the claimant's right to return to court after it has exhausted its administrative remedies." *Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 n.5 (5th Cir. 2004) (citations omitted).

(dismissing *pro se* plaintiff's Title VII claim without prejudice where complaint failed to allege exhaustion of administrative remedies).[7]

### 2.    *Rehabilitation Act*

Defendant contends that Plaintiff failed to exhaust his administrative remedies with respect to any claim under the Rehabilitation Act because he did not contact an EEO counselor within the 45-day limitations period. (doc. 17 at 9.)

The Rehabilitation Act provides "the exclusive remedy for a federal employee alleging disability-based discrimination." *Dark v. Potter*, 293 F. App'x 254, 258 (5th Cir. 2008) (citing 29 U.S.C. § 701 *et seq.*). Plaintiffs are subject to the same procedural constraints under the Rehabilitation Act, including administrative exhaustion, as Title VII. *See Green v. Brennan*, 136 S. Ct. 1769, 1775 (2016) (citing 42 U.S.C. § 2000e–16(c)); *see also Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017) (citing 29 U.S.C. § 794a(a)(1) ("A Rehabilitation Act claimant must satisfy the procedural requirements set forth in Title VII of the Civil Rights Act of 1964.")). To properly exhaust administrative remedies, a federal employee must initiate contact and request informal counseling from an agency EEO counselor within 45 days of the date of the matter alleged to be discriminatory. *See* 29 C.F.R. § 1614.105(a)(1); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).[8] The 45-day period "starts running when the plaintiff knows of the discriminatory *act*, not when the plaintiff perceives a discriminatory motive behind the act." *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1217 n.2 (5th Cir. 1992) (emphasis original). The failure to notify the EEO counselor in a timely fashion "constitutes a failure to exhaust administrative remedies and

---

[7]Because Plaintiff's Title VII claim is subject to dismissal for failure to exhaust, it is unnecessary to reach Defendant's argument that he also failed to state a claim. (*See* doc. 17 at 7-8.)

[8]If the counselor is unable to resolve the matter, the federal employee must then file a charge of discrimination with the EEO division of his agency and exhaust his administrative remedies before bringing a civil action. *See* 29 C.F.R. § 1614.106; *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).

acts as a bar to judicial pursuit of those claims," absent waiver, estoppel, or equitable tolling. *Pacheco v. Rice*, 966 F.2d 904, 905 n.11 (5th Cir. 1992). "Although a district court may evaluate whether it is proper to apply the doctrines of waiver, estoppel or equitable tolling, these doctrines are to be applied sparingly." *Howery v. Chertoff*, No. CIV.A. H-08-196, 2009 WL 890400, at \*5 (S.D. Tex. Mar. 27, 2009) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002)).

a.    *Untimely Conversion*

Plaintiff alleges that the BOP discriminated against him when it failed to timely convert him from Excepted Appointment to Career Conditional to allow him to apply to other federal agencies. (doc. 3 at 16.) He alleges that on May 11, 2015, he received an email from OUSA's HR officer informing him that he was not considered for its Ohio paralegal position because of his Excepted Appointment and that he should have been converted to Career Conditional in April 2015, and that a BOP HR specialist separately told him that he would never be converted to Career Conditional. (*Id.* at 5-6.) Although he claims that he "became aware" at that time that his "Schedule A Excepted Appointment" status may have been the reason his earlier applications for federal government positions were not referred, he did not contact an EEO counselor until June 25, 2015, 57 days later. (*Id.*) He therefore failed to timely contact an EEO counselor within 45 days after he was notified of his untimely conversion. *See Ramsey*, 286 F.3d at 269.

Plaintiff argues that he was not provided any regulations or guidance about the hiring and conversion process when he first learned about his untimely conversion, and that he underwent a "very long journey" before fully realizing that his prior applications were not considered because of his "[S]chedule A disability status". Confusion about regulations, policies, or procedures is not a sufficient basis for tolling the 45-day limitations period. *See Angus v. Mayorkas*, No. 1:20-CV-

00242-LY-SH, 2022 WL 1295289, at *6 (W.D. Tex. Apr. 29, 2022), *adopted by* 2022 WL 4398800 (W.D. Tex. June 14, 2022) (explaining that "the 45-day limitation period begins from the date of non-selection, not from the date Plaintiff contends that she became aware of it"). As explained, "the limitations period on an employment discrimination claim 'begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred.'" *Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002) (citation omitted). Plaintiff admits that by May 11, 2015, he knew he had not been converted to Career Conditional status and that it resulted in him not being considered for the OUSA paralegal position or the positions at other federal agencies he previously applied for. (*See* doc. 3 at 6.) Because Plaintiff's initial contact with an EEO counselor was on July 7, 2015, more than 45 days after he was on notice of his untimely conversion, his Rehabilitation Act claim based on the BOP's failure to timely convert him to Career Conditional is time-barred and should be dismissed.

              b.    *Non-Selection for BOP Position and Reasonable Accommodations*

        Plaintiff also alleges that the BOP discriminated against him when it did not consider his application for its Texas paralegal position due to his "Schedule A disability status" and failed to grant him accommodations to apply for that position or meet with him for a secondary review of his application. (doc. 3 at 7-8, 16-18.) He claims that a Schedule A employee with his educational background was qualified for that position when it was posted at the GS-09 level, but he was unable to submit a complete an application for the position, and the BOP refused to consider him under Schedule A. (*Id.* at 7-8.) He alleges that on July 6, 2015, he was notified that he was not selected for the Texas position, and that no one would meet with him when he requested a secondary review and verbal explanation. (*Id.* at 7.) As noted, Plaintiff contacted an EEO counselor on July 7, 2015, which is well within the 45-day limitations period for these allegations. (*Id.*)

Defendant argues that all his Rehabilitation Act claims are time-barred because Plaintiff "was informed on May 11, 2015, that he was not considered for a position because of his Schedule A appointment, and that his appointment could have been converted in April of 2015." (doc. 17 at 9.) He points to Plaintiff's allegation that he "became aware" that his "Schedule A Excepted Appointment" status may have been a reason why none of his previous job applications in the federal sector had been referred upon receiving the email about his non-selection for the OUSA paralegal position on May 11, 2015. (*See* doc. 3 at 5-6.) While Plaintiff did not timely contact an EEO counselor within 45 days of his notice of the untimely conversion and the impact his Excepted Appointment status had on his prior applications for jobs with the OUSA and other federal agencies, as he had learned of the alleged discriminatory conduct by at least May 11, 2015, his non-selection for the BOP's Texas paralegal position and reasonable accommodation requests are discrete acts of discrimination that occurred on or about July 6, 2015. Because Plaintiff met with an EEO counselor on July 7, 2015, he timely exhausted his administrative remedies with respect to his Rehabilitation Act claim based on the BOP not selecting him for the Texas paralegal position and not accommodating his requests to apply for the position and to meet with him about his application. Defendant's motion to dismiss his Rehabilitation Act claims based on his non-selection for the BOP's Texas paralegal position and reasonable accommodation requests relating to that position should therefore be denied.

**B.**  **Failure to State a Claim**

Defendant argues that Plaintiff fails to state a plausible claim for relief under the FMLA. (doc. 17 at 8.)

"The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of an employee's right to take FMLA leave." *Lanier v. Univ. of*

*Texas Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013) (citing 29 U.S.C. § 2612(a)(1)). To establish a prima facie interference claim under the FMLA, a plaintiff must allege facts sufficient to show that (1) he was an eligible employee, (2) his employer was subject to the requirements of the FMLA, (3) he was entitled to leave, (4) he gave proper notice of his intention to take leave, and (5) his employer denied him the FMLA benefits to which he was entitled. *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). The FMLA also prohibits discrimination and retaliation against an employee for his exercise of FMLA rights under its proscriptive provision. *See* 29 U.S.C. § 2615(a)(2); *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006). "To state a prima facie claim for discrimination or retaliation under the FMLA, the plaintiff must allege that '(1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave.'" *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 305 (5th Cir. 2021) (quoting *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998)).

Here, Plaintiff's original complaint generally states that the BOP violated his FMLA rights, but there are no allegations that the BOP interfered, restrained, or denied the exercise of or attempt to exercise, any right under the FMLA, or that he suffered any adverse employment action because he sought leave under the FMLA. Because Plaintiff has failed to state a claim for interference or retaliation under the FMLA, his FMLA claim should be dismissed with prejudice.

### III.  RECOMMENDATION[9]

Defendant's motion to dismiss should be **GRANTED in part** and **DENIED in part**, and

---

[9]Defendant also moved to dismiss Plaintiff's complaint for failing to timely file his federal lawsuit but withdrew this argument in his reply. (*See* doc. 22 at 3-4.)

Plaintiff's Title VII claim and Rehabilitation Act claim based on untimely conversion should be **DISMISSED without prejudice** for failure to exhaustion administrative remedies, and his FMLA claim should be **DISMISSED with prejudice** for failure to state a claim. Plaintiff should be allowed to proceed to trial on his Rehabilitation Act claim relating to his non-selection for the BOP's Texas paralegal position and reasonable accommodation requests relating to that position.

    **SO RECOMMENDED** on this 23rd day of May, 2023.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

    A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE