IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER KELLEY, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:21-CV-15-L-BK |
| | § | |
| MERRICK GARLAND, ATTORNEY | § | |
| GENERAL, U.S. DEPARTMENT | § | |
| OF JUSTICE,[1] | § | |
| DEFENDANT. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE[2]

This case was initially referred to then-United States Magistrate Judge Irma C. Ramirez

for pretrial management under 28 U.S.C. § 636(b) and Special Order 3.  *See* Doc. 7.  In

December 2023, pursuant to Special Order No. 3-351, it was reassigned to the undersigned

United States magistrate judge for pretrial management.  *See* Doc. 30.  Now before the Court for

findings and a recommended disposition, is *Defendant's Motion for Summary Judgment*, Doc.

34.  For the reasons that follow, *Defendant's Motion for Summary Judgment*, Doc. 34, should be

**GRANTED** and Plaintiff's sole remaining claim be **DISMISSED WITH PREJUDICE**.

### I. BACKGROUND

Because this matter is already the subject of prior findings, conclusions, and a

recommendation by United States Magistrate Judge Ramirez, *see* Doc. 23, and an Order of the

---

[1] Merrick Garland replaced William Barr as the U.S. Attorney General and is substituted as
Defendant in this case under Federal Rule of Civil Procedure 25(d).

[2] This document is not filed under seal because the Court determines that any references herein
to portions of the filings in this matter are not properly subject to sealing and that the risks of
disclosure do not outweigh the public's right to know.

District Court accepting those findings and conclusions, *see* Doc. 27, the Court need only briefly summarize the pertinent background facts.

In 2021, Christopher Kelley (Plaintiff), a legal assistant for the Federal Bureau of Prisons (BOP), proceeding *pro se*, filed this lawsuit against Merrick Garland, Attorney General of the United States Department of Justice (Defendant), alleging unlawful discrimination based on disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (ADA), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Title VII), the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (FMLA), and the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (Rehabilitation Act). Doc. 3 at 2.

The sole claim remaining is Plaintiff's Rehabilitation Act claim based on Plaintiff's allegation that the BOP discriminated against him when it did not consider his application for its Texas paralegal position due to his "Schedule A disability status," and failed to grant him accommodations to apply for that position or meet with him for a secondary review of his application. Doc. 3 at 7-8, 16-18; Doc. 27 at 2.[3] Plaintiff, who has dyslexia and attention deficit disorder, alleges that as a Schedule A employee with his educational background, he was qualified for that position when it was posted at the GS-09 level, but he was unable to submit or complete an application for the position, and the BOP refused to consider him for the position

---

[3] In June 2023, the District Court accepted the magistrate judge's findings, conclusions, and recommendation that Defendant's motion to dismiss be granted in part and denied in part. *See* Doc. 27. Specifically, the District Court (i) granted Defendant's motion to dismiss Plaintiff's Title VII claim and Rehabilitation Act claim based on his allegations that the BOP failed to timely convert him from Excepted Employment to Career Conditional and dismissed these claims without prejudice for failure to exhaust administrative remedies; (ii) granted Defendant's motion to dismiss Plaintiff's FMLA claim and dismissed that claim with prejudice for failure to state a claim upon which relief can be granted; and (iii) denied Defendant's motion to dismiss Plaintiff's Rehabilitation Act claim relating to his non-selection for the BOP's Texas paralegal position and reasonable accommodation requests relating to that position. *See* Doc. 27 at 2.

under Schedule A.  Doc. 3 at 3, 7-8.  He further alleges that in July 2015, he was notified that he was not selected for the position, and that no one would meet with him when he requested a secondary review and verbal explanation.  Doc. 3 at 7.

The undisputed material facts are as follows:

There are two principal methods to apply for employment with the federal government: (1) the competitive process and (2) the "excepted" or non-competitive process reserved for certain applicants, including disabled individuals.  Doc. 36-1 at 2-3, 9.  Under the competitive process, applicants respond to eligibility questions and an online assessment questionnaire to identify their Competencies/Knowledge, Skills and Abilities (KSAs).  Doc. 36-1 at 3.  That process is open to all applicants.  Doc. 36-1 at 9.

Schedule A is one of the "excepted" processes that allows federal agencies to hire certain kinds of applicants without resorting to the traditional, competitive, hiring process.  Doc. 36-1 at 3 (citing 5 C.F.R. § 213.3102).  Schedule A allows applicants to apply for federal employment without satisfying the competitive standards that others are required to meet.  Doc. 36-1 at 3. However, the decision to accept applications under Section A is purely discretionary and agencies are not required to hire under Schedule A.  Doc. 36-1 at 3, 16.

Persons with intellectual, severe physical disabilities, and severe psychiatric disabilities are included under Schedule A.  *See* 5 C.F.R. § 213.3102(u).  Schedule A is not, however, limited to persons with disabilities.  Other categories under Schedule A include chaplains and chaplain assistants (5 C.F.R. § 213.3102(a)), attorneys (*id.* §213.3102(d)), law clerk trainee positions (*id.* § 213.3102(e)), and temporary and less-than-full time positions in remote/isolated locations where examination is impracticable (*id.* § 213.3102(i)(1)).

Although Schedule A is specifically designed to provide an alternative path into federal employment, there are distinctions for employees who are in the Excepted Service versus the Competitive Service.  Doc. 36-1 at 3.  For example, BOP opens some positions solely to Competitive Service employees.  Doc. 36-1 at 3.  The regulations, however, do provide many Schedule A appointees with a path to a competitive appointment.  Disabled employees appointed under Schedule A may, solely at the agency's discretion, be converted from "excepted" to "competitive" after two years of successful performance.  Doc. 36-1 at 18-19.

In 2012, the BOP, which had obtained Plaintiff's resume from the Office of Personnel Management's Shared List of Persons with Disabilities, contacted Plaintiff, who had just graduated from law school.  Doc. 38 at 19.  Under Schedule A, the BOP offered Plaintiff a position as a GS-05 Administrative Assistant, which Plaintiff accepted in 2013.  Doc. 38 at 19.

In May 2015, Plaintiff applied for position CO-2015-0254, a Paralegal Specialist GS-9/11 position at the Consolidated Staffing Unit in Grand Prairie, Texas.  Doc. 36-1 at 4; Doc. 38 at 55-61.  The position was open to DOJ employees in the local commuting area and eligible DOJ Surplus and Displaced employees in the local commuting area.  Doc. 38 at 55.  The position was announced as a competitive position, and thus could not be filled through an appointment under Schedule A.  Doc. 36-1 at 3; Doc. 38 at 55-61.  The position was, however, open to qualified veterans rated as 30% or more disabled, and the announcement explained that reasonable accommodations could be provided for applicants with disabilities.  Doc. 36-1 at 3; Doc. 38 at 60.  Because the Paralegal Specialist position was posted as a competitive position, Plaintiff's application was considered competitively, meaning he was required to identify his KSAs.  Doc. 36-1 at 4.  Plaintiff's responses were electronically scored, and he did not meet the minimum KSA score required by BOP for the position.  Doc. 36 at 4; Doc. 38 at 250-51.  Even

4

had he received the necessary points or greater, Plaintiff would still have been rejected at the next level of review because he was not in the Competitive Service as required for that announcement.  Doc. 36-1 at 4.

Three candidates were ultimately identified as "best qualified" for the Paralegal Specialist GS 9/11 position.  Doc. 38 at 287.  One of those candidates was a disabled veteran with a greater than 30% disability.  Doc. 38 at 288-289.  The BOP ultimately decided that the needs of the agency could be better addressed by hiring an additional attorney, rather than a paralegal, and none of the applicants was hired.  Doc. 36-1 at 5.  The position was converted to an attorney position and a new attorney was hired.  Doc. 38 at 137.

Upon learning that his application would not be considered for the Paralegal Specialist GS 9/11 position, Plaintiff unsuccessfully requested that he be able to apply for that position under Schedule A and, as an accommodation, orally advocate his qualifications to the selection official.  Doc. 36-1 at 4.  In October 2015, Plaintiff filed a complaint with the BOP's EEO office, alleging disability discrimination based on, as relevant here, his non-selection for the Paralegal Specialist GS 9/11 position.  Doc. 38 at 18-23.  After a full hearing, an administrative law judge (ALJ) denied the EEO complaint.  Doc. 38 at 276-283.  With respect to Plaintiff's non-selection for the Paralegal Specialist GS 9/11 position, the ALJ explained that despite Plaintiff's belief that his non-selection was discriminatory, he had no evidence to support his belief.  Doc. 38 at 280 ("Complainant's simple reliance upon speculation and belief at the hearing to prove that he was subjected to disparate treatment is insufficient to establish a claim of discrimination.").  In October 2020, the DOJ entered a Final Order accepting the ALJ's decision.  Doc. 3 at 21-23.

Plaintiff filed this action in January 2021.  Doc. 3.  As previously explained, following the District Judge's Order dismissing numerous of Plaintiff's claims, *see supra* note 2, remaining

5

is Plaintiff's Rehabilitation Act claim relating to his non-selection for the BOP's Texas paralegal

position (including reasonable accommodation requests relating to that position).  Defendant has

moved for summary judgment and seeks leave to file Exhibit 2 of its summary judgment

appendix under seal.  Plaintiff has filed an opposition to Defendant's motion for summary

judgment, Doc. 39, as well as an appendix in support of his opposition, Docs. 39-1 through 39-5.

After Defendant filed its reply brief, Doc. 40, Plaintiff filed an opposition to Defendant's reply,

Doc. 41, which the Court liberally construes as a sur-reply.[4]

## II. MOTION TO SEAL

As a preliminary matter, the Court considers *Defendant's Unopposed Motion for Leave to
File Appendix Exhibit 2 under Seal* ("*Defendant's Motion for Leave*"), Doc. 37.  Defendant

moves for leave to file Exhibit 2 to its summary judgment appendix under seal, contending that

the "Appendix contains Kelley's sensitive and/or confidential medical information, along with

that of other federal employees, and therefore should be restricted from public view."  Doc. 37 at

1.  The motion is unopposed; nonetheless, the Court must make an independent determination of

whether sealing is justified.

The Court "heavily disfavor[s] sealing information placed in the judicial record" and

discourages such requests.  *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519-20 (5th Cir.

---

[4] Briefing on Defendant's motion was complete on January 19, 2024, when Defendant filed its
reply brief.  *See* L.R. 7.1 (setting response deadline of 21 days after the subject motion is filed
and a reply deadline of 14 days after the filing of a response).  Seven days later, after Defendant
filed its reply, Plaintiff filed a sur-reply on January 26, 2024.  Because neither this Court's local
rules nor the Federal Rules of Civil Procedure authorize sur-replies "as a matter of right, the
district court only accepts such filings in exceptional or extraordinary circumstances." *Gezu v.
Charter Commc'ns*, 17 F.4th 547, 556 (5th Cir. 2021) (cleaned up) (citation omitted).  Here,
Plaintiff did not seek or obtain leave of court to file his sur-reply; nor does his sur-reply itself
establish the existence of exceptional or extraordinary circumstances warranting the sur-reply.
Plaintiff's sur-reply was unauthorized and, thus, not considered by the undersigned.

2022).  "The public's right of access to judicial records is a fundamental element of the rule of law. . . .  Article III courts are independent, and it is particularly because they are independent that the access presumption is so vital—it gives the federal judiciary a measure of accountability, in turn giving the public confidence in the administration of justice."  *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) (cleaned up).

Substantively, different standards exist for parties sealing their own discovery and sealing adjudicative materials.  Sealing discovery parties file with the court falls under the good cause standard.  *June Med. Servs.*, 22 F.4th at 521.  By contrast, for adjudicative materials, a line-by-line, page-by-page analysis of the proposed sealed documents must be undertaken.  *Id.* at 521 ("To decide whether something should be sealed, the court must undertake a document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." (cleaned up)).

"Under both standards, the working presumption is that judicial records should not be sealed."  *June Med. Servs.*, 22 F.4th at 521 (cleaned up).  "Courts should be ungenerous with their discretion to seal judicial records[.]"  *Id.* (cleaned up). "And, to the extent that any sealing is necessary, it must be congruent to the need."  *Id.* (cleaned up).

Here, after reviewing the contents of Exhibit 2, *see* Doc. 38 (sealed), and balancing the public's right of access against presented interests favoring nondisclosure of sensitive and/or confidential medical information, the Court finds that the interests favoring nondisclosure prevail and Defendant's request to seal Exhibit 2 is congruent to the need.[5]  *See June Med. Servs.*, 22

---

[5] In its proposed order, Defendant asks the Court to find that "good cause exists to protect this information from public view."  Doc. 31-1 at 1.  Here, however, because the documents at issue are exhibits in support of Defendant's motion for summary judgment, thereby requiring judicial resolution of the merits, the "stricter balancing standard" applies, not the "good cause" standard. *See Binh Hoa Le*, 990 F.3d at 419.

F.4th at 521 (cleaned up); *Binh Hoa Le*, 990 F.3d at 419-20.  Therefore, *Defendant's Motion for Leave*, Doc. 37, is **GRANTED**.  The Clerk of the Court is thus directed to maintain the filing of Exhibit 2 of *Defendant's Motion for Summary Judgment*, Doc. 38, under seal.

### III. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citation omitted).

Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).  The Court "must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment, but a party opposing summary judgment may not rest on mere conclusory allegations or denials in its

pleadings." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (internal alterations omitted) (quoting *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995)).

Here, Plaintiff's remaining claim asserts that Defendants are liable for violating the Rehabilitation Act. He proceeds under theories of discrimination based on his disability and failure to accommodate. Specifically, Plaintiff alleges that the BOP discriminated against him based on his disability in violation of the Rehabilitation Act by failing to consider his application for its Paralegal Specialist GS 9/11 position and failing to grant him accommodations to apply for that position or meet with him for a secondary review of his application. Doc. 3 at 7-8, 16-18; Doc. 27 at 2. Defendant argues it is entitled to summary judgment on both the discrimination and failure-to-accommodate claims. Doc. 35, passim.

### A. *Discrimination Based on Disability*

Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Here, where Plaintiff has no direct evidence of discrimination, the Court applies the three-step *McDonnell Douglas* burden shifting framework. *See Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 525 (5th Cir. 2022) (ADA case) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 380 (5th Cir. 2007) (Rehabilitation Act case).[6] Under that framework, a plaintiff must first establish a prima facie case of disparate treatment. *See Gosby*, 30 F.4th at 525; *Crawford*, 245 F. App'x at 380. This requires a plaintiff to show

---

[6] "The prima facie case of discrimination under the [Rehabilitation Act] is operationally identical to the test under the ADA." *Austin v. City of Pasadena, Texas*, 74 F.4th 312, 334 (5th Cir. 2023) (quoting *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 676 n.8 (5th Cir. 2004)).

that he "(1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action, and (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees." *Hoffman v. Baylor Health Care Sys.*, 597 F. App'x 231, 235 (5th Cir. 2015). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Gosby*, 30 F.4th at 527 (cleaned up).

Defendant does not dispute that Plaintiff was a disabled person within the meaning of the Rehabilitation Act based on his dyslexia. Defendant contends, however, that Plaintiff has failed to raise a genuine dispute of material fact as to the second and fourth elements required to establish a prima facie case. Doc. 35 at 8-10. The Court agrees. In his opposition brief, Plaintiff contends he "has established a prima facie case of discrimination" and that "[t]here are a number of material facts that remain in dispute." Doc. 39 at 11.[7] For the reasons that follow, however, the Court finds that Plaintiff has failed to raise a genuine dispute of material fact as to the second and fourth elements of a prima facie case.

First, Plaintiff has failed to raise a genuine dispute of material fact as to the second element of a prima facie case, *i.e.*, that he was qualified for the Paralegal Specialist GS-9/11 position. It is undisputed that position CO-2015-0254, a Paralegal Specialist GS-9/11 position at the Consolidated Staffing Unit in Grand Prairie, Texas, was announced as a competitive position and open to local DOJ employees in the Competitive Service. Doc. 36-1 at 4; Doc. 38 at 55-61. It is also undisputed that because the position was announced as a competitive position, it could

---

[7] Plaintiff, in opposition to *Defendant's Motion for Summary Judgment*, continues to argue about the BOP's alleged failure to "timely" initiate the discretionary process of converting him from an excepted status to a competitive status. *See* Doc. 39 at 5, 9-10. The District Court previously dismissed as time-barred Plaintiff's Rehabilitation Act claim premised on the BOP's alleged failure to timely convert him from Excepted Appointment to Career Conditional to allow him to apply to other federal agencies. *See* Doc. 27 at 2. Thus, Plaintiff's complaints about these matters are not material.

not be filled through an appointment under Schedule A.  Doc. 36-1 at 3; Doc. 38 at 55-61.  The position was, however, open to qualified veterans rated as 30% or more disabled, and the announcement explained that reasonable accommodations could be provided for applicants with disabilities.  Doc. 36-1 at 3; Doc. 38 at 60.  It is also undisputed that Schedule A appointments include many categories of potential applicants, only one of which pertains to disability, and therefore, no category of Schedule A appointees was eligible to formally apply through the traditional application process for the Paralegal Position, including attorneys appointed under Schedule A.  Doc. 36-1 at 3-4; *see also* 5 C.F.R. § 213.3102(a)-(11).

Because the Paralegal Specialist GS-9/11 position was posted as a competitive position, Plaintiff's application was considered competitively, meaning he was required to identify his KSAs.  Doc. 36-1 at 4.  Plaintiff has failed to provide any evidence controverting that his responses were scored electronically and he did not meet the minimum KSA score required by BOP for the position.  *See* Doc. 36 at 4; Doc. 38 at 250-51.  Although Plaintiff may *believe* to the contrary, he provides no competent summary judgment evidence showing that the electronic scoring of his responses to questions related to his KSAs failed to adequately capture his qualifications in determining that he lacked the qualifications for the position.

Further, Plaintiff has failed to raise a genuine dispute of material fact as to the fourth element of his prima facie case, *i.e.*, that he was "replaced by a non-disabled person or treated less favorably than non-disabled employees."  *Hoffman*, 597 F. App'x at 235.  In its undisputed that no Schedule A appointees, regardless of disability status or other qualifications, were included in the designated applicant pool for the Paralegal Specialist position.  It is also undisputed that the position was reallocated, and an attorney was hired.  Doc. 36-1 at 5; Doc. 38 at 137.  Plaintiff has no evidence that other non-disabled employees, excepted or competitive,

11

were treated more favorably than he was.  Doc. 38 at 123-124.  That is particularly true given

that Schedule A contains many categories of potential applicants who were not necessarily

disabled.  *See* Doc. 38 at 9-12.  All those categories of persons, including attorneys, were

precluded from applying for the Paralegal Specialist GS-9/11 position through Schedule A.  *See*

Doc. 38 at 9, 94.

 For these reasons, Plaintiff has failed to raise a genuine dispute of material fact as to the

second or forth prongs of a disparate treatment claim under the Rehabilitation Act, which require

a showing that he "(2) was qualified for the job . . . and (4) was replaced by a non-disabled

person or treated less favorably than non-disabled employees."  *Hoffman*, 597 F. App'x at 235.

### B. *Failure to Accommodate*

 To support his failure-to-accommodate claim, Plaintiff must establish: "(1) he is a

qualified individual with a disability; (2) the disability and its consequential limitations were

known by the covered entity; and (3) the entity failed to make reasonable accommodations."

*Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015) (citation omitted).  If the plaintiff is not a

qualified individual, the failure-to-accommodate inquiry ends.  *See Weber v. BNSF Ry. Co.*, 989

F.3d 320, 323 (5th Cir. 2021).  To be "qualified," the plaintiff must have "the requisite skill,

experience, education and other job-related requirements of the employment position such

individual holds or desires and, with or without reasonable accommodation, can perform the

essential functions of such position."  29 C.F.R. § 1630.2(m).  Plaintiffs "bears the burden of

proof of reasonableness."  *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996).

 Here, even viewing all evidence in the light most favorable to Plaintiff, Plaintiff has

failed to raise a genuine dispute of material fact with respect to his failure-to-accommodate

claim.  As a threshold matter, Plaintiff's KSA responses demonstrated that he did not meet the

minimum requirements for the Paralegal Specialist GS-9/11 position.  Doc. 36 at 4; Doc. 38 at 250-51.  Thus, Plaintiff was not a "qualified individual."  In addition, Plaintiff has admitted that he was able to do his job with the BOP without any accommodation for his dyslexia and ADHD. Doc. 38 at 29.  Further, Plaintiff has not demonstrated through competent evidence that being allowed to orally advocate for his selection was a "reasonable" accommodation for his disabilities.  And, he has no evidence suggesting that the BOP misunderstood his qualifications.

Insofar as Plaintiff contends that the BOP was required to consider him for the Paralegal Specialist GS-9/11 position as a Schedule A applicant, or explain to him the limitations of the appointment he sought and allow him a second review, undisputed evidence shows that the decision to accept applications under Section A is purely discretionary and agencies are not required to hire under Schedule A.  *See* Doc. 36-1 at 3, 16.  The Court of Appeals for the Fifth Circuit recently confirmed as much, holding, "[a]s other courts have recognized, Schedule A authority is permissive, not mandatory." *Angus v. Mayorkas*, No. 22-50600, 2023 WL 3918986, at *6 (5th Cir. Jun. 9, 2023) (affirming the district court's decision dismissing the plaintiff's disability-discrimination claim based on plaintiff's contention that "an agency engages in disability discrimination when it fails to proactively prioritize applicants with a disability" by declining to hire for a particular position using Schedule A).  The Fifth Circuit in *Angus* explained that "Schedule A gives agencies a 'means to avoid competitive placement,'" but it "does not impose an obligation to use this authority in any specific case.'" *Id.* (quoting *MacDonald v. Cohen*, 233 F.3d 648, 653 (1st Cir. 2000)).  The applicable federal regulations, therefore, do not "confer a 'civil right'" such that an agency's "failure to utilize the Schedule A hiring authority can, on its own, sustain a cause of action for discrimination." *Id.*

13

For these reasons, Plaintiff has failed to raise a genuine dispute of material fact that, in violation of the Rehabilitation Act, his non-selection for the Paralegal Specialist GS-9/11 position was because of disability discrimination or that Defendant failed to offer him reasonable accommodations.

## IV. CONCLUSION

*Defendant's Motion for Summary Judgment* should be **GRANTED**, and Plaintiff's remaining claim under the Rehabilitation Act should be **DISMISSED WITH PREJUDICE**.  As no claims will remain, the Clerk of the Court should be directed to close this case.

**SO RECOMMENDED** on August 20, 2024.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

14